**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| XIUMIN LI, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-712-B |
| | § | |
| GENENTECH, INC., et al., | § | |
| | § | |
| **Defendants.** | § | Pretrial Management |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By standing order of reference dated May 10, 2017 (doc. 27), before the Court are *Defendant Fidelity Workplace Services LLC's Motion to Dismiss*, filed April 6, 2017 (doc. 6); *Defendants Genentech, Inc. and Fidelity Workplace Services LLC's Motion to Transfer Venue*, filed April 6, 2017 (doc. 7); *Defendant Genentech Inc.'s Motion to Dismiss*, filed April 12, 2017, (doc. 15); "*Plaintiff's, Pro Se, Xiumin Li's Motion to Clarify Party Fidelity's Name*" [sic], filed May 10, 2017 (doc. 26); and the *Motion to Dismiss and Brief in Support for Defendants Department of Justice, Department of State, and Secret Service*, filed June 12, 2017 (doc. 37). Based on the relevant filings and applicable law, the motions to dismiss should all be **GRANTED**, the alternative motions to transfer venue and the motion to clarify should be **DENIED as moot**, and the claims against the unnamed "John Doe" defendant should be dismissed *sua sponte*.

## I. BACKGROUND

On March 10, 2017, Xiumin Li (Plaintiff) filed this *pro se* action against Genentech, Inc. (Genentech), Fidelity, Inc.[1] (Fidelity), the United States, and an unknown John Doe (collectively

---

[1] In its motion to dismiss, Fidelity explains that "Fidelity, Inc." is not a "duly organized business entity" and that the proper party is Fidelity Workplace Services, LLC, which manages the employment benefit plans at issue in this suit. (doc. 6 at 1 n.1.)

Defendants). (doc. 3 at 1.)[2]

Plaintiff alleges that she was employed as a research assistant at Genentech in San Francisco, California beginning December 2011, where she "was an open healthy athletic person." (*Id*. at 2.) In July 2013, she felt a "sudden sickness during work" and received "extremely abnormal lab test results" that ultimately required surgery. (*Id*.) She believes that her health issues were due to Genentech's failure "to provide a safe and healthy work environment," and she filed a complaint with the Occupational Safety and Health Administration (OSHA) in California that she subsequently appealed on October 14, 2013.[3] (*Id*.) Plaintiff claims that Genentech terminated her employment on September 13, 2013, because she complained to OSHA and because of her "poor performance and bad working relationship" with her supervisors. (*Id*.)

After her termination from Genentech, Plaintiff moved to Dallas, Texas to "recover [from her] sickness." (*Id*.) She claims to have received threats "from Chinese at LA Fitness" [sic] in Dallas and that an unknown John Doe was interfering with her e-mail and cell phone access because her devices "started showing malicious man-made disfunctions." (*Id*.) She reported these problems to the government, but she was told that it was "useless to report to the U.S. government because Chinese are so influential, that they had penetrated everywhere; they can even frame Plaintiff [as] insane as the usual way they treated the anti-Chinese politicians" [sic]. (*Id*. at 3.)

In February 2015, Plaintiff was "forced" to go to China because of the "invasion of privacy" from John Doe. (*Id*.) She reported this to the U.S. Consulate General in Shenyang, China, and sought

---

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[3] The complaint does not state the outcome of her OSHA complaint. (*See* doc. 3.)

humanitarian aid in the form of "emergency financial help." (*Id*.) She did not obtain any financial help even though she "followed up on a monthly basis with Agents of the Department of State (Paul, Daren, Tan, Lee, etal)" [sic]. (*Id*.) After two years in China, Plaintiff returned to Dallas and "reported the case twice to secret service officers (Lonie, James, etal) [sic] at previous president G.W. Bush's house in Dallas" on October 27, 2016 and November 12, 2016, and she also reported the problem to "officer Greg" at the FBI office in Dallas on November 18, 2016. (*Id*. at 4.) She claims that all of the agencies refused to investigate the "crimes." (*Id*.)

In 2017, Plaintiff returned to San Francisco, where she heard "hearsay" from her "old friends" that Genentech "had settled a big sum of fund for Plaintiff through third party with fake Plaintiff's signature through e-mail" [sic]. (*Id*. at 3.) She requested all of her personal information from Genentech, but received no response. (*Id*.) At this same time, Plaintiff requested an "early retirement withdraw[al]" from her retirement account that was managed by Fidelity. (*Id*.) She discovered an account "related to [Genentech] under Plaintiff's name without any previous notification or authorization."[4] (*Id*.) When she asked Fidelity about this "unrecognized" account, she received only "partial misleading and confusing statements of those accounts." (*Id*.)

Plaintiff now brings this suit alleging various tort claims against each of the Defendants, including negligence, intentional infliction of emotional distress, defamation, fraud, false imprisonment, conversion, and invasion of privacy. (*Id*. at 5-14.) She further asserts "constitutional rights and human rights violations" generally against the United States. (*Id*. at 9-14.) She seeks

---

[4] Plaintiff attached a letter dated April 20, 2017, that she received from Fidelity to her motion to clarify. (doc. 26-2.) It explained that she had two retirement accounts with Fidelity, one from her former employer Myriad Genetics, Inc., and one from Genentech that was initially identified as "Genentech Inc. Tax Reduction Investment Plan" but is "now known as the U.S. Roche 401(k) Savings Plan." (*Id*. at 1-2.) It also explained that she transferred the entire balance from her Myriad account to her personal bank account, but that her U.S. Roche 401(k) Savings Plan had no withdrawals, and the balance was fully available to her. (*Id*.)

injunctive relief and appears to seek damages upward of $200 million per claim. (*Id.* at 5-14.)

Genentech and Fidelity each filed motions to dismiss under Rule 12(b)(6) and alternative motions to transfer venue to the Northern District of California. (docs. 6, 7, 15.) The United States filed a motion to dismiss under both Rules 12(b)(1) and 12(b)(6). (doc. 37.) Plaintiff filed a "Motion to Clarify Party Fidelity's Name." (doc. 26.) All of these motions have been fully briefed and are now ripe for recommendation.[5] (docs. 17, 18, 22, 23, 24, 30, 36, 39, 44, 45.)

## II. RULE 12(b)(1)

The United States first moves to dismiss Plaintiff's tort claims under Rule 12(b)(1) because she fails to provide a basis for subject-matter jurisdiction. (doc. 37.)

## A.     Legal Standard

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any

---

[5] Plaintiff filed surreplies to each of the motions to dismiss and the motion to transfer venue. (docs. 31, 32, 34, 47.) Since she already filed timely responses to all of the pending motions, she was required to seek leave of court before filing a surreply in compliance with the local rules. *See* L.R. 56.7 ("Except for the motions, responses, replies, briefs, and appendixes required by these rules, a party may not, without the permission of the presiding judge, file supplemental pleadings, briefs, authorities, or evidence."). Because Plaintiff did not seek leave to file her surreply, "it will not be considered." *Neely v. Khurana*, No. 3:07-CV-1344-D, 2009 WL 1605649, at *3 n.4 (N.D. Tex. June 5, 2009). Even if considered, the surreplies would not change the findings or recommendation.

stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*. Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*.

A district court may dismiss for lack of subject-matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (en banc). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject-matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). If sufficient, those allegations alone provide jurisdiction. *Id*. Facial attacks are usually made early in the proceedings. *Id*. "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998) (citations omitted).

If the defendant supports the motion with evidence, however, then the attack is "factual" and

"no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Because this motion to dismiss under Rule 12(b)(1) relies solely on Plaintiff's complaint, it presents a facial attack that does not require the Court to resolve matters outside the pleadings. *See Bridgewater v. Double Diamond–Delaware, Inc.*, No. 3:09-CV-1758-B, 2010 WL 1875617, at *5 (N.D. Tex. May 10, 2010).

**B.    FTCA**

The United States contends that to the extent that Plaintiff's tort claims are intended to assert claims under the Federal Tort Claims Act (FTCA), subject matter jurisdiction is lacking because she failed to exhaust her administrative remedies. (doc. 37 at 4.)

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands,* 461 U.S. 273, 287 (1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer,* 510 U.S. 471, 475 (1994). Because federal sovereign immunity is jurisdictional in nature, the consent or waiver must be unequivocally expressed. *Freeman v. United States,* 556 F.3d 326, 335 (5th Cir. 2009).

Under the FTCA, "Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008);

*see also* 28 U.S.C. §§ 1346(b)(1), 2671-2680. To successfully sue under the FTCA, a claim must be: (1) against the United States; (2) for money damages; (3) for injury or loss of property, or personal injury or death; (4) caused by the negligent or wrongful act or omission of any employee of the federal government; (5) while acting within the scope of his or her employment; and (6) under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the state law where the act or omission occurred. 28 U.S.C. § 1346(b); *FDIC*, 510 U.S. at 477-78.

A plaintiff must exhaust her administrative remedies before filing suit. *See McNeil v. United States*, 508 U.S. 106, 112-13 (1993); *Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995). Section 2675(a) of Title 28 of the United States Code provides, in pertinent part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

Absent compliance with the statute's exhaustion requirement, a federal district court is without jurisdiction to consider any claims under the FTCA. *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222-23 (5th Cir. 1989).

Here, Plaintiff specifically alleges "breach of duty,"[6] defamation, false imprisonment, invasion of privacy, and intentional infliction of emotional distress claims against the United States based on the actions of several federal government employees. (doc. 3 at 12-14.) To the extent that these claims

---

[6] In her response to the motion to dismiss, Plaintiff explains that her "breach of duty" claim is a claim for negligence. (doc. 44 at 2.)

are brought under the FTCA, she concedes that she "did not exactly file claim[s] to the three federal agencies," but that she "exhausted all means to let [her] voice be heard" because she "tried to e-mail senators, executive branches, [and the] judicial branch" [sic]. (doc. 44 at 3-4.) Because it is clear from the face of the complaint that Plaintiff has not exhausted her administrative remedies as required under § 2675(a), subject matter jurisdiction over any tort actions against the United States is lacking, and these claims should be dismissed.

### III. RULE 12(b)(6)

The United States also moves under Rule 12(b)(6) to dismiss Plaintiff's claim for "constitutional rights and human rights violations." (doc. 37.) Fidelity and Genentech similarly move for dismissal of all of Plaintiff's allegations because her complaint fails to state a claim against them. (docs. 6, 15.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. However, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

A.      **United States**

The United States argues that Plaintiff's claim for "constitutional rights and human rights violations" fails to state a claim upon which relief can be granted. (doc. 37 at 6-10.)

Plaintiff's claim is based upon allegations that various federal agencies failed to provide assistance or protect her from an unknown John Doe who was interfering with her cell phone/e-mail access and was "depriv[ing] Plaintiff's freedom and constitutional rights without due procedure." (docs. 3 at 4, 14.) She does not identify any specific constitutional violation in her complaint, but she clarifies in her response that her claim for the government's "failure to act" is brought under the "[d]ue process clause of the 5th Amendment [which] forbids the federal government from denying equal

protection of the laws."[7] (doc. 44 at 1, 3, 5, 8.)

### 1. *Bivens*

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court held that the violation of a person's constitutional rights by a federal official may give rise to an action for monetary damages in federal court. Unless the defendants have deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States, however, a plaintiff has no viable claim under *Bivens*. *See Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999) (recognizing that "[a] *Bivens* action is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials").

Here, Plaintiff sues only the United States. (doc. 3 at 1-2.) *Bivens* provides a remedy for victims of constitutional violations by government officers in their individual capacities; it does not provide for a cause of action against the United States. *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999). This is because the purpose of a *Bivens* cause of action is to deter a federal officer from violating a person's constitutional rights. *FDIC v. Meyer*, 510 U.S. 471, 485 (1994); *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Even if Plaintiff's

---

[7] In her response to the motion to dismiss, Plaintiff states for the first time that the United States "not only violated 5th Amendment, but also 1st Amendment [and] 14th Amendment" [sic] and "possibly 4th Amendment, 6th Amendment, 8th Amendment, [and] 9th Amendment" [sic]. (doc. 44 at 7.) She also generally alleges that "[t]his action not only involved Civil Rights Act and RICO and ERISA and Wiretapping Act" [sic]. (doc. 44 at 2.) These new allegations and claims in her response are not part of the pleadings to be considered for purposes of the motion to dismiss. *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473 at *4 n.3 (N.D. Tex. Aug. 15, 2014); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552 at *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the Court) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). She has not sought or been granted leave to amend her complaint to add these allegations, and she has not shown that either defendant consented to an amendment. *See* Fed. R. Civ. P. 15(a)(2). Nevertheless, the *pro se* response may be liberally construed as a request for leave to amend her complaint. *See Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss, in which plaintiff first alleged that she had been willfully discriminated against, should be treated as a motion to amend her pleadings).

claim is liberally construed as a *Bivens* action alleging a violation under the equal protection component of the Fifth Amendment's Due Process Clause, she fails to state a viable claim because a *Bivens* action cannot be brought against the United States.[8]

### 2.    *Individuals*

To the extent that Plaintiff's *pro se* complaint may be liberally construed as asserting a Fifth Amendment violation against any of the individuals generally mentioned in her complaint, she also fails to state a claim against them.

The Due Process Clause of the Fifth Amendment "applies to the federal government a version of equal protection largely similar to that which governs the states under the Fourteenth Amendment," which prohibits states from denying any person within their jurisdiction the equal protection of the laws and essentially requires that all similarly situated persons be treated alike *Rodriguez-Silva v. I.N.S.*, 242 F.3d 243, 247 (5th Cir. 2001); s*ee Plyler v. Doe,* 457 U.S. 202, 216 (1982); *Piotrowski v. City of Houston,* 237 F.3d 567, 578 n.15 (5th Cir. 2001). To state an equal protection claim, a plaintiff must allege that a government actor "intentionally discriminated against the plaintiff because of membership in a protected class." *See Williams v. Bramer,* 180 F.3d 699, 705 (5th Cir. 1999). However, "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Enquist v. Or. Dep't of Agric.,* 553 U.S. 591, 601 (2008) (citing *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)).

To state a class-of-one equal protection claim, a plaintiff must allege that a state actor has

---

[8] To the extent that Plaintiff is attempting to assert a *Bivens* action against any federal agency, including the Department of Justice, the Department of State, or the Department of Homeland Security, her claim similarly fails because this type of action cannot be brought against a federal agency. *See FDIC v. Meyer,* 510 U.S. 471, 484-86 (1994); *Moore v. United States Dep't of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995).

intentionally treated him or her differently than others similarly situated, and there is no rational basis for the difference in treatment. *See Olech,* 528 U.S. at 564. "'[I]f the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws.'" *Little v. Texas Attorney General,* No. 3:14-CV-3089-D, 2015 WL 5613321 at *6 (N.D. Tex. Sept. 24, 2015) (quoting *Johnson v. Rodriguez,* 110 F.3d 299, 306 (5th Cir. 1997)). "[T]he Fifth Circuit requires Plaintiffs to show 'that the defendant deliberately sought to deprive [them] of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position.'" *Lugo v. Collin County,* No. 4:11–CV–00057, 2011 WL 4378093 at *11 (E.D. Tex. Aug. 2, 2011) (citing *Shipp v. McMahon,* 234 F.3d 907, 916 (5th Cir. 2000), *overruled on other grounds by McClendon v. City of Columbia,* 305 F.3d 314, 328–29 (5th Cir. 2002)), *adopted by* 2011 WL 4383452 (E.D. Tex. Sept. 20, 2011). Conclusory allegations of "class of one" discrimination fail to state a claim. *Bell v. Woods,* 382 F. App'x 391, 393 (5th Cir. 2010) (conclusory allegation that inmate was treated differently from other sex offenders failed to state a claim where inmate did not identify any other prisoners who were sexual offenders and were allowed to enroll in computer courses and inmate did not allege that other prisoners were convicted of the same offense as he was or that they were allowed into the same courses for which he applied).

Here, Plaintiff appears to argue that the government agents singled her out specifically and failed to investigate her complaints or protect her from the unknown John Doe because "Chinese are so influential [that] they had penetrated everywhere" [sic]. (doc. 3 at 3-4.) Her conclusory allegations do not specify how others were similarly situated, and she does not allege that she was treated differently from others who also reported similar claims regarding "crimes" perpetrated by an

unknown individual. Plaintiff, moreover, does not allege that the government agents deliberately sought to deprive her of the equal protection of the laws for reasons of a personal nature unrelated to their duties. *See Williams v. Curtis*, No. 3:16-CV-151-D-BH, 2017 WL 979053, at *4 (N.D. Tex. Jan. 18, 2017), *adopted by* 2017 WL 976948 (N.D. Tex. Mar. 13, 2017) (dismissing due process claim alleging that the postal officials "singled him out from all other people who received mail . . . [and] withheld mail from him"); *see also Moreno v. City of Brownsville*, No. B-08-504, 2011 WL 3813105, at *7 (S.D. Tex. Aug. 26, 2011) (citing *Wilson v. First Gibraltar Bank, F S B, Arlington, Tex.*, 22 F.3d 1095 (5th Cir. 1994)) (noting that a negligent failure to investigate does not violate due process). Because Plaintiff fails to state a due process violation, this claim should be dismissed.[9]

## B.    Fidelity

Fidelity argues that Plaintiff's claims of "bad faith," intentional infliction of emotional distress, and fraud against it should be dismissed for failure to state a claim. (doc. 6.)  Plaintiff alleges that she discovered an "unrecognized" account "related to [Genentech] under Plaintiff's name without any previous notification or authorization" and received only "partial misleading and confusing statements" from Fidelity about the account. (doc. 3 at 3.)

### 1.    *"Bad Faith"*

Fidelity first argues that Plaintiff's "bad faith" claim should be dismissed because her vague allegations are implausible and insufficient to allow it to respond. (doc. 6 at 4.) Plaintiff responds that

---

[9]   Plaintiff also appears to allege that the failure to investigate shows that the United States conspired with the unknown John Doe to "deprive Plaintiff's freedom." (doc. 3 at 4.) To state a claim for conspiracy under *Bivens*, a plaintiff must "establish the existence of a conspiracy" as well as a violation of a constitutional right in furtherance of the conspiracy. *Thompson v. Johnson*, 348 F. App'x 914, 920 (5th Cir. 2009) (citing *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)). To the extent that Plaintiff is bringing a conspiracy claim, it should also be dismissed for failure to state a claim because Plaintiff fails to assert a constitutional violation and makes only conclusory allegations as to the existence of the conspiracy. *See Williams*, 2017 WL 979053, at *4.

the "suspicious liquidated Genentech, Inc. Tax Reduction Investment Plan" was improperly "merged" with her "U.S. Roche 401K Plan" without her authorization, and she also contends that her "bad faith" claim is really a claim for breach of fiduciary duty. (doc. 17 at 4-5.)

Under Texas law, the essential elements of a breach of fiduciary duty claim are "(1) a fiduciary relationship must exist between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 581 (5th Cir. 2015) (quoting *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 479 (Tex. App.–Dallas 2010, no pet.)). Whether a party owes a fiduciary duty is a question of law. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). Courts impose fiduciary duties on parties based on the special nature of the relationships between such parties. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002). A fiduciary duty arises from certain formal relationships as a matter of law, such as an attorney-client or trustee relationship. *Id.* Courts also recognize an informal fiduciary duty that arises from "a moral, social, domestic or purely personal relationship of trust and confidence." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex.1998).

Even considering the new facts alleged in the response, and assuming that Plaintiff's claim for "bad faith" can be liberally construed as a claim for breach of fiduciary duty, she still fails to state a claim upon which relief can be granted. She claims that Fidelity breached its fiduciary duties because it "manages Plaintiff's retirement accounts by charging [a] management fee" and failed to disclose and provide "accounts statements and notification" about the "merger" of the retirement plans. (doc. 17 at 4-5.) She does not, however, identify any "special relationship" between her and Fidelity or exactly

what duties that it owed to her, as well as how any alleged breach directly resulted in an injury to her.[10]

(*See* doc. 3.) Even accepting all of her allegations as true, Plaintiff fails to state a claim for breach of fiduciary duty or "bad faith," and this claim should be dismissed. *See Richardson v. Ocwen Loan Servicing, LLC*, No. 3:13-CV-2578-O, 2014 WL 7336890, at *7-8 (N.D. Tex. Dec. 24, 2014) (dismissing breach of fiduciary duty claims where plaintiff failed to allege existence of a "special relationship of trust and confidence"); *see also Johnson v. Affiliated Computer Servs., Inc.*, No. 3:10-CV-2333-B, 2011 WL 4011429, at *6 (N.D. Tex. Sept. 9, 2011) (dismissing breach of fiduciary duty claim where plaintiff failed to plead sufficient facts that would indicate the existence of a fiduciary duty owed by the defendant).

### 2. *Intentional Infliction of Emotional Distress*

Fidelity next argues that Plaintiff fails to state a claim for intentional infliction of emotional distress against it. (doc. 6 at 4.)

Under Texas law, the elements to a infliction of emotional distress claim are: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the plaintiff's emotional distress was severe. *Geske v. Bank of America Home Loans*, No. 3:11-CV-2220-M, 2011 WL 6968317, at *4 (N.D. Tex. Dec. 12, 2011) (citing *Tex. Farm Bureau Mut. Ins. Co. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002)), *adopted by* 2012 WL 75752 (N.D. Tex. Jan. 9, 2012). "Whether a defendant's conduct is

---

[10] Though Plaintiff states in her response that "security brokers owe [a] fiduciary duty to their customers in matters within the scope of their agency," she does not allege facts showing that Fidelity is her security broker; her description of Fidelity as simply "managing [her] retirement accounts" does not appear to qualify it as an employed broker who negotiates contracts or deals on her behalf. (doc. 17 at 4); *see* BROKER, Black's Law Dictionary (10th ed. 2014) (defining "securities broker" as a "broker employed to buy or sell securities for a customer, as opposed to a securities dealer, who trades as a principal before selling the securities to a customer"); *see also Romano v. Merrill Lynch, Pierce, Fenner & Smith*, 834 F.2d 523, 530 (5th Cir. 1987) (explaining that "the nature of the fiduciary duty owed will vary, depending on the relationship between the broker and the investor").

'extreme and outrageous' is a question of law." *Id.* (quoting *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001)). "The mere fact that a defendant's conduct is tortious or otherwise wrongful does not, standing alone, necessarily render it 'extreme and outrageous.'" *Bradford*, 48 S.W.3d at 758. Extreme and outrageous behavior by the defendant must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)).

Here, Plaintiff responds that Fidelity's "partial misleading and confusing statements" caused her "embarrassment, anxiety, humiliation, worry, puzzling, frustration, and anger" [sic] that was "beyond description." (doc. 17 at 6.) She fails to allege how this conduct in itself was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Bradford*, 48 S.W.3d at 758 (citation omitted). Plaintiff's claim for intentional infliction of emotional distress should accordingly be dismissed for failure to state a claim. *See Rhine v. First Baptist Dallas Church*, No. 3:14-CV-3055-M-BH, 2016 WL 6471941, at *5 (N.D. Tex. Oct. 4, 2016), *adopted by* 2016 WL 6436335 (N.D. Tex. Oct. 31, 2016) (dismissing intentional infliction of emotional distress claim because the plaintiff's allegations that the defendant "treated [her] differently than church members, told [her that she] could not take her bag into the church service, and told [her] not to return to the church" was not extreme or outrageous).

### 3. *Fraud*

Fidelity next argues that Plaintiff's fraud action fails to state a claim with particularity as required by Rule 9(b). (doc. 6 at 4-5.)

"The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff;

(2) the representation was material; (3) the representation was false; (4) when the defendant made the representation[,] the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd., v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (per curiam) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). Constructive fraud involves "the breach of some legal or equitable duty . . . that the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Schroeder v. Wildenthal*, No. 3:11-CV-0525-B, 2011 WL 6029727, at *4 (N.D. Tex. Nov. 30, 2011) (quoting *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1965)). Unlike actual fraud, constructive fraud does not require any intent to deceive. *Id.* Both claims are subject to Rule 9(b). *Potter*, 607 F.3d at 1032; *Schroeder*, 2011 WL 6029727, at *4.

Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams*, 112 F.3d at 179).

Plaintiff responds that the "facts constituting fraud are not accessible" to her, and that a

"breach of fiduciary duty is a form of constructive fraud." (doc. 17 at 7-8.) Her fraud claim is based upon Fidelity's alleged "partial misleading and confusing statements of [her retirement] accounts" made directly to her, however. (doc. 3 at 3.) She does not identify any material, false representations that Fidelity made to her that she relied upon to her detriment. (*See* docs. 3, 17.) Her general, conclusory allegations fall well short of the "the who, what, when, where, and how" heightened pleading requirement required under Rule 9(b). *See Williams*, 112 F.3d at 177; *see also* Fed. R. Civ. P. 9(b). Because she fails to allege the elements of fraud with sufficient particularity under Rule 9(b), her fraud claims should be dismissed for failure to state a claim.[11] *See Turner v. AmericaHomeKey Inc.*, No. 3:11-CV-860-D, 2011 WL 3606688, at *5 (N.D. Tex. Aug. 16, 2011) (dismissing fraud claim for failure to plead with particularity under Fed. R. Civ P. 9(b)).

## C.    Genentech

Genentech argues that Plaintiff's claims of negligence, intentional infliction of emotional distress, defamation, and fraud against it should be dismissed because they are either time-barred or "improperly vague." (doc. 15 at 1.)

Plaintiff's complaint alleges that Genentech's failure "to provide a safe and healthy work environment" caused her health problems and "extremely abnormal lab test results" in 2013, and that she was terminated for her "poor performance and bad working relationship" on September 13, 2013, after she filed a complaint with OSHA. (*Id.* at 2-3.) She also alleges that she met with her "old friends"

---

[11] On May 10, 2017, Plaintiff filed a "Motion to Clarify Party Fidelity's Name," in which she explains how the defendant that she named as "Fidelity, Inc." is actually "Fidelity Investments" and that the "unrecognized party Fidelity Workplace Services, LLC responded to Plaintiff's complaint" instead. (doc. 26 at 1-2.) Fidelity Workplace Services, LLC responds that it is the proper defendant because it is the entity that Genentech contracted with to provide the retirement services at issue, and that "Fidelity Investments" is not a legal entity but simply a "trade name under which Fidelity entities conduct business." (doc. 36 at 2-3.) Because it is recommended that Plaintiff's allegations against the "Fidelity, Inc." entity–whether that be Fidelity Investments or Fidelity Workplace Services, LLC– wholly fail to state a claim and should be dismissed as a matter of law, her motion to clarify should be **DENIED as moot**.

in January 2017, who told her that Genentech "had settled a big sum of fund for Plaintiff through third party with fake Plaintiff's signature through e-mail" [sic]. (*Id.* at 3.) She claims to have requested her personal information from Genentech on January 26, 2017, but received no response. (*Id.*)

## 1. *Negligence*

Genentech first contends that Plaintiff's negligence action is both time-barred and too vague to state a claim. (doc. 15 at 4-5.)

The elements of a negligence cause of action in Texas are: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540-41 (5th Cir. 2005) (citing *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)). A legal duty is a general obligation imposed by law "apart from and independent of promises made and . . . the manifested intentions of the parties—to avoid injury to others." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 496 (Tex. 1991). The statute of limitations for negligence claims for personal injuries under Texas law is two years, and the limitations period begins to run on the date the injury occurs. Tex. Civ. Prac. & Rem. Code § 16.003(a); *see Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex. 1998).

Plaintiff argues that the statute of limitations should be tolled on her negligence claim due to Genentech's "fraudulent concealment," and because her injuries are "inherently undiscoverable." (doc. 22 at 4-6.) Her complaint, however, shows that she clearly discovered her alleged injuries as early as July 2013, when she received her "abnormal lab test results" and subsequently filed an OSHA complaint against Genentech. (doc. 3 at 2.) There is no basis to apply any tolling doctrine to the relevant two year statute of limitations, and Plaintiff's negligence claims based upon injuries before

March 10, 2015 (two years before this suit was filed), should be dismissed for failure to state a claim.[12] *See Drake v. Fitzsimmons*, No. 3:12-CV-1436-B, 2013 WL 775354, at *2-4 (N.D. Tex. Mar. 1, 2013) (dismissing claims under Rule 12(b)(6) based on limitations).

To the extent that she bases her negligence action on the allegations that she heard "hearsay" in 2017 that Genentech "settled a big sum of fund for Plaintiff through third party with fake Plaintiff's signature through e-mail" [sic] and failed to provide her with her personal information file (doc. 3 at 3), she also fails to state a plausible claim for negligence because it is based upon conclusory allegations that do not include any facts related to Genentech's duty to her after terminating her employment or how that duty was breached and caused her damages.[13] *See, e.g., Algoe v. Texas*, No. 3:15-CV-1162-D, 2016 WL 6902154, at *14 (N.D. Tex. Sept. 29, 2016) (dismissing a negligence claim for failure to allege sufficient facts to plead a plausible claim), *adopted by* 2016 WL 6893682 (N.D. Tex. Nov. 21, 2016); *Rodgers v. City of Lancaster Police*, No. 3:13-CV-2031-M-BH, 2017 WL 457084, at *17 (N.D. Tex. Jan. 6, 2017) (same), *adopted by* 2017 WL 447216 (N.D. Tex. Feb. 2, 2017). Her negligence claim should be dismissed for failure to state a claim.

### 2. *Intentional Infliction of Emotional Distress*

Genentech next argues that Plaintiff's claim for intentional infliction of emotional distress is both barred by the statute of limitations and implausible. (doc. 15 at 5-6.)

As noted, the elements to an intentional infliction of emotional distress claim under Texas law

---

[12] Plaintiff's negligence claims against her employer are also barred as a matter of law because workers' compensation remedies provide the exclusive remedies for such negligence claims alleged against an employer. *See* Tex. Lab. Code § 408.001(a); *see also In re Texas Mut. Co.*, 157 S.W. 75, 78 (2004).

[13] In her response, Plaintiff generally states that Genentech owed her "fiduciary duties," but she does not identify any "special relationship" between them to create a fiduciary relationship or what specific duties that Genentech breached after terminating her employment. (doc. 22 at 4-5.)

are: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the plaintiff's emotional distress was severe. *Geske*, 2011 WL 6968317, at *4 (citation omitted). The statute of limitations for claims of intentional infliction of emotional distress under Texas law is two years. Tex. Civ. Prac. & Rem. Code § 16.003(a); *see Zurita v. Lombana*, 322 S.W.3d 463, 473 (Tex. App.–Houston [14th Dist] 2010, pet. denied).

Because there is no basis to toll the statute of limitations, Plaintiff's intentional infliction of emotional distress claim based upon her injuries and Genentech's conduct before March 10, 2015, should be dismissed for failure to state a claim.[14] To the extent that she bases this claim on her alleged interactions with Genentech in 2017, she fails to state a plausible claim because she does not explain how Genentech's conduct in itself was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" or how its alleged failure to provide her personal file information caused her severe emotional distress. *Bradford*, 48 S.W.3d at 758 (citation omitted). Plaintiff's claim for intentional infliction of emotional distress should accordingly be dismissed.

### 3.    *Defamation*

Genentech also argues that Plaintiff's defamation claim is untimely and implausible under Rule 12(b)(6). (doc. 15 at 6-7.)

Under Texas law, "[d]efamation is a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470

---

[14] In her response, Plaintiff alleges for the first time that, while she was employed at Genentech, her immediate supervisor "abused his power" by forcing Plaintiff to let his wife use her gym membership and was subsequently threatened after the gym's manager discovered the deception. (doc. 22 at 6-7.) Even if these additional facts are considered, her claim is still barred by the two-year statute of limitations because she was fired on September 13, 2013, which was over three years after this suit was filed. (doc. 3 at 2.)

F.3d 1150, 1161 (5th Cir. 2006) (citing *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.–Waco 2005, no pet.)). "Defamatory statements are 'published' if they are communicated to a third party capable of understanding their defamatory connotation and in such a way that the third party did so understand." *Crouch v. J.C Penney Corp., Inc.*, 564 F. Supp. 2d 642, 646 (E.D. Tex. 2008), *aff'd*, 337 F. App'x 399 (5th Cir. 2009). "A statement is defamatory if it exposes a person to 'public hatred, contempt or ridicule, or financial injury or if it impeaches any person's honesty, integrity, virtue, or reputation.'" *Shaunfield v. Bank of America*, No. 3:12-CV-3859-B, 2013 WL 1846885, at *3 (N.D. Tex. Apr. 24, 2013) (citing *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App.–Dallas 2003, no pet.)); *see also* Tex. Civ. Prac. & Rem. Code § 73.001. Generally, a plaintiff who is a private individual (such as Plaintiff is in this case) must show that the defendant acted negligently regarding the truth of the defamatory statement at the time that he published it. *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 595–96 (5th Cir. 2007) (citing *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). The statute of limitations for defamation under Texas law is one year. Tex. Civ. Prac. & Rem. Code § 16.002(a); *see Cote v. Rivera*, 894 S.W.2d 536, 542 (Tex. App.–Austin 1995, no writ) (barring a defamation cause of action because the lawsuit was filed more than one year after the date the alleged defamatory statements were made).

Here, Plaintiff bases her defamation claim on Genentech's comments that she was terminated due to her "poor performance and bad working relationship" on September 13, 2013. (docs. 3 at 2, 22 at 7.) She appears to argue that the statute of limitations should be tolled because she "could not reasonably have discovered the facts giving rise to the cause of action," and the period should not begin to run until she discovered the publication of the defamatory matter. (doc. 22 at 7.) Even if the statute of limitations is tolled, she still fails to state a claim for defamation because there are no

allegations that any specific statements were false, that they were published to a third party, or that they damaged her reputation. *See Shaunfield*, 2013 WL 1846838, at *4 (dismissing defamation claim that failed to identify defamatory statements). Her defamation claim should be dismissed for failure to state a claim.

### 4.  *Fraud*

Genentech next argues that Plaintiff's fraud claim is defective and fails to state a claim under Rule 9(b). (doc. 15 at 7.)

As noted, "[t]he elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation[,] the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Yinguang Chem. Indus.*, 607 F.3d at 1032-33 (citation omitted). Rule 9(b), moreover, requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *see also City of Clinton*., 632 F.3d at 153.

Plaintiff responds with the same argument that she offered in her response to Fidelity's motion to dismiss her fraud claim, namely that the "facts constituting fraud are not accessible" to her, and that a "breach of fiduciary duty is a form of constructive fraud." (doc. 22 at 7-8.) Her complaint and response, however, fail to identify even the basis for her belief that Genentech made a material, false representation to her that she relied upon to her detriment. (*See* docs. 3, 22.) Her general, conclusory allegations fall well short of the "the who, what, when, where, and how" heightened pleading requirement required under Rule 9(b). *See Williams*, 112 F.3d at 177.  Because she fails to allege the

elements of fraud with sufficient particularity under Rule 9(b), her fraud claims should be dismissed for failure to state a claim.[15]

## IV. *SUA SPONTE* DISMISSAL

The Court may *sua sponte* raise the issue of personal jurisdiction of a defendant, provided that the plaintiff is offered a reasonable opportunity to answer the jurisdictional concerns. *King v. Forest*, No. 3:08-CV-1405-L, 2008 WL 4951049, at *4-5 (N.D. Tex. Nov. 14, 2008) (citing *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatorvskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (approving *sua sponte* dismissal of action instead of entry of default judgment)). The fourteen-day time frame for filing objections to a recommended dismissal provides Plaintiff with notice and an opportunity to respond. *See id; see also Ratcliff v. Coker*, No. 9:08-CV-127, 2008 WL 4500321 at *3 n.1 (E.D. Tex. Sept. 26, 2008).

Here, Plaintiff names a singular John Doe, who is identified simply as an "unidentified party involved between China and [the United States]." (doc. 3 at 2.) She brings six tort claims against this unknown party, including invasion of privacy, intentional infliction of emotional distress, defamation, false imprisonment, fraud, and conversion. (*Id*. at 9-11.) She alleges that John Doe deprived her of the "freedom of communication" by blocking her e-mail, cell phone, and access to the Internet from 2014 to the present. (*Id*. at 3-4.) Plaintiff offers no description of this individual, who this individual may be working for, his/her residency or citizenship, his/her connection to the Northern District of Texas, or how she would be able to identify this party. (*See* doc. 3.) She, moreover, has not attempted to serve this individual using any alternative method of service. (*See* doc. 14.)

---

[15] Because it is recommended that all of Plaintiff's claims against both Fidelity and Genentech be dismissed as a matter of law for failure to state a claim, their alternative motion to transfer venue to the Northern District of California should be **DENIED as moot**. (doc. 7.)

The Federal Rules of Civil Procedure "do not authorize [a plaintiff] to maintain suit indefinitely against a fictitious defendant," such as a "John Doe." *Warner v. Lear Corp.*, No. 3:15-CV-1878-D, 2017 WL 930829, at *10 (N.D. Tex. Mar. 9, 2017) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1321, at 382 (3d ed. 2004 & Supp. 2016)). Plaintiffs, even those proceeding *pro se*, have a "duty to provide information sufficient to identify the defendants, and the courts lack personal jurisdiction over unidentified fictitious defendants." *Sorrell v. Dallas, TX Bridge Shelter*, *Staff, Bldg. 2*, No. 3:08-CV-1065-G-BH, 2008 WL 3915347, at *1 (N.D. Tex. Aug. 25, 2008) (citing *Taylor v. Federal Home Loan Bank Bd.*, 661 F. Supp. 1341, 1350 (N.D. Tex.1986)). Because Plaintiff has failed to provide sufficient information to identify this defendant, her claims against John Doe should be dismissed for lack of personal jurisdiction. *See Randolph v. London*, No. 09-0179-FJP-C, 2010 WL 128318, at *1 n.1 (M.D. La. Jan. 12, 2010), *aff'd*, 400 F. App'x 894 (5th Cir. 2010) (dismissing unidentified John Doe defendant *sua sponte* because "[n]either the Federal Rules of Civil Procedure nor [the relevant statutes] provides authority for joining fictitious defendants in a civil proceeding").

## V. OPPORTUNITY TO AMEND

Notwithstanding a plaintiff's failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314 at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600 at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870 at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600 at *2. Courts,

nonetheless, may appropriately dismiss an action with prejudice without giving an opportunity to amend when it finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Even if Plaintiff is afforded an opportunity to amend, her tort claims against the United States would still fail for lack of subject-matter jurisdiction, and most of her tort claims against Genentech would still be time-barred by the statute of limitations. As discussed, Plaintiff's remaining tort claims are subject to dismissal for failure to state a claim even after the new facts and claims alleged in Plaintiff's responsive filing are considered. Her constitutional violation claims under *Bivens*, moreover, are based on purely conclusory allegations regarding an unidentified John Doe such that no amendment would be able to state a plausible claim upon which relief can be granted. It therefore appears that Plaintiff has alleged her best case or that amendment would be futile, so an opportunity to amend is unwarranted.

## VI.    RECOMMENDATION

The United States' motion to dismiss under 12(b)(1) and 12(b)(6) should be **GRANTED**, and Plaintiff's tort claims against it should be **DISMISSED without prejudice** for lack of subject matter jurisdiction, and her remaining claims against it should be **DISMISSED with prejudice** for failure to state a claim. Both Fidelity's and Genentech's motions to dismiss under 12(b)(6) should be **GRANTED**, and all of Plaintiff's claims against them should be **DISMISSED with prejudice** for failure to state a claim. Fidelity's and Genentech's alternative motion to transfer venue, and Plaintiff's "Motion to Clarify," should be **DENIED as moot**. Plaintiff's claims against John Doe should be *sua sponte* **DISMISSED without prejudice** for lack of personal jurisdiction.

**SO RECOMMENDED** on this 20th day of December, 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE